IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| HUGO CESAR RODRIGUEZ CHAVEZ, | ) <br> ) <br> ) CASE NO. 1:25-CV-00267-RAL <br> ) |
| Plaintiff | ) <br> ) RICHARD A. LANZILLO <br> ) Chief United States Magistrate Judge |
| vs. | ) <br> ) |
| MICHAEL HOLMAN, IN HIS OFFICIAL CAPACITY AS INTERIM WARDEN OF THE ERIE COUNTY PRISON; BRIAN MCSHANE, IN HIS OFFICIAL CAPACITY AS FIELD OFFICE DIRECTOR OF THE IMMIGRATION AND CUSTOMS ENFORCEMENT, ENFORCEMENT AND REMOVAL OPERATIONS PHILADELPHIA FIELD OFFICE; KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; AND PAMELA BONDI, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, | ) MEMORANDUM OPINION ON <br> ) PETITION FOR WRIT OF HABEAS <br> ) CORPUS <br> ) <br> ) IN RE: ECF NO. 1 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants | ) <br> ) |

Petitioner Hugo Cesar Rodriguez Chavez ("Rodriguez" or "Petitioner"), an immigration detainee, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition"). ECF No. 1. For the following reasons, the Court will

grant the petition and order that Rodriguez be provided a bond hearing before a neutral immigration judge.[1]

I.  Material Facts and Procedural History[2]

Rodriguez is a citizen of the Republic of El Salvador. On or about October 18, 2022, he entered the United States without inspection and, shortly thereafter, he was detained at a Department of Homeland Security ("DHS") detention center in Los Fresnos, Texas. He was later transferred to various detention facilities, including the Louisiana ICE Processing Center, where he is currently detained. Rodriguez filed his Petition in this Court on August 26, 2025, while he was detained at the Erie County Prison in Erie, Pennsylvania. His Petition seeks release from custody or, in the alternative, an individualized bond hearing. *Id.*

After he was detained by ICE, Rodriguez was initially placed in expedited removal proceedings. ECF No. 1 ¶ 21. During a credible fear interview, it was determined that he had demonstrated a credible fear, and he was placed in full removal proceedings and was served with a Notice to Appear ("NTA") on November 26, 2022. *Id.*; Ex. 1. The Notice charged that he was subject to removal under: (1) Section 212(a)(7)(A)(i)(I)[3] of the Immigration and Nationality Act ("INA"), as amended, as an alien who, at the time of application for admission, was not in

---

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings in accordance with 28 U.S.C. § 636.

[2] The parties' submissions indicate agreement regarding the material facts and procedural history of this case.

[3] 8 U.S.C. § 1182(a)(7)(A)(i)(I).

2

possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other entry document required by the INA, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under Section 211(a) of the INA; and (2) Section 212(a)(6)(A)(i)[4] of the INA, as amended, as an alien present in the United States without being admitted or paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General. ECF No. 1 ¶ 22; Ex. 1. Proceeding pro se, Rodriguez admitted to the allegations in the NTA and conceded removability. *Id.* ¶ 23. An Immigration Judge ("IJ") sustained the charges of removability and designated El Salvador as the country for Rodriguez's removal. *Id.*

On February 16, 2023, Rodriguez, through counsel, filed an Application for Asylum, Withholding of Removal, and Protection Under the Convention Against Torture ("CAT"). *Id.* On April 19, 2023, the IJ denied his application, and he appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). *Id.* On June 20, 2024, the BIA remanded the matter to the Immigration Court for additional factual findings. *Id.* On August 22, 2024, a new IJ assigned to the matter on remand granted Rodriguez's application for protection under CAT. *Id.* ¶ 26. The IJ concluded that Rodriguez had suffered past torture and was more likely than not to suffer torture in the future if he was returned to El Salvador. DHS appealed that decision. On September 23, 2024, the ERO Buffalo Field Office Director authorized Rodriguez's

---

[4] 8 U.S.C. § 1182(a)(6)(A)(i).

continued detention pending the outcome of his appeal on the grounds that he constituted a public safety threat. ECF No. 18-2 ¶ 13. On October 2, 2025, the BIA remanded the case to the IJ for further factual findings concerning Rodriguez's eligibility for relief under CAT. *Id.*, ¶ 14; ECF No. 18-3 (Oct. 2, 2025, Opinion). On October 30, 2025, the IJ denied Rodriguez's CAT application. On November 25, 2025, Rodriguez filed an appeal to the BIA from the IJ's decision. *See* ECF No. 24. His appeal remains pending as of the date of this Memorandum Opinion. *Id.*

II.     Legal Standard and Jurisdiction

Under 28 U.S.C. § 2241(c), a prisoner or detainee may obtain habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). Rodriguez filed his Petition while he was detained within the jurisdiction of this Court, he remains detained by DHS, and he asserts that his continued detention violates due process. This Court therefore has jurisdiction over his Petition.[5] *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

---

[5] District courts may grant habeas relief only "within their respective jurisdictions." 28 U.S.C. §2241(a). This requires "nothing more than that the court issuing the writ have jurisdiction over the custodian." *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 495 (1973). "Jurisdiction lies in only one district: the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). This Court retains jurisdiction over Rodriguez's Petition because the Petition was filed when he was confined at the Erie County Prison, which is within this judicial district. Rodriguez's subsequent transfer to a detention center outside of this district does not deprive this Court of jurisdiction. *See A.S.R. v. Trump*, 780 F. Supp. 3d 583, 586 (W.D. Pa. 2025) (Haines, J.) (holding that "because [noncitizen detainee] was present in this judicial District when he filed his Petition and named his immediate custodian, this Court has jurisdiction over his Petition, and his subsequent transfer to another district does not deprive this Court of that jurisdiction").

4

III.   Discussion and Analysis

As a threshold step in determining the legality of Rodriguez's detention, the Court must identify the grounds for that detention. *See Appiah v. Lowe*, 2025 WL 510974, *3 (M.D. Pa., February 14, 2025) (noting that in a habeas case challenging ICE detention, "[t]he Court must first determine the basis for [the Petitioner's] detention"). Based on their submissions to the Court, the parties agree that Rodriguez is detained under 8 U.S.C. § 1225(b) because he was taken into custody promptly following his entry into the United States. *See* ECF No. 1, ¶ 26; ECF No. 18, p. 2. Under § 1225(b)(1), arriving noncitizens are normally ordered removed "without further hearing or review," § 1225(b)(1)(A)(i), but an arriving noncitizen who indicates either an intention to apply for asylum or a credible fear of persecution, § 1225(b)(1)(A)(ii), may remain, but "shall be detained" while his asylum application is pending, § 1225(b)(1)(B)(ii). Thus, by statute, Rodriguez is subject to mandatory detention while his asylum application remains pending. And, in *Jennings v. Rodriguez*, the Supreme Court held that "nothing in the statutory text [of § 1225(b)] imposes any limit on the length of detention" or "says anything whatsoever about bond hearings." 583 U.S. 281, 297 (2018). Thus, periodic bond hearings are not required as a matter of statute under § 1225(b). *Jennings,* however, did not address whether noncitizens subjected to prolonged detention under that statute or related statutes are entitled to bond hearings as a matter of due process. *See id.* at 312.

The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful,

temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). In *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210 (3d Cir. 2020), the Court of Appeals for the Third Circuit recognized that "an alien lawfully present but detained under [8 U.S.C.] § 1226(c) can still challenge his detention under the Due Process Clause [of the Fifth Amendment]." Thus, where a noncitizen is mandatorily detained pending removal proceedings under § 1226(c), the Due Process Clause demands a bond hearing once detention has become "unreasonably prolonged." *Id.* at 210–11.

Respondents argue that *German Santos* does not control this Court's analysis because it dealt with noncitizens detained under 8 U.S.C. § 1226(c). It is true that neither the United States Supreme Court nor the Court of Appeals for the Third Circuit has directly addressed whether arriving aliens detained under § 1225(b) have the same due process rights as individuals detained under § 1226(c). *See C.B. v. Oddo*, 2025 WL 2977870, at *5 (W.D. Pa. Oct. 22, 2025). But this Court agrees with the others in this circuit that have held that the due process considerations identified in *German Santos* also apply to noncitizens detained under § 1225(b). *See, e.g., A.L. v. Oddo*, 761 F. Supp. 3d 822 (W.D. Pa. Jan 6, 2025); *Akhmadjanov v. Oddo*, 2025 WL 660663, at *4 (W.D. Pa. Feb. 28, 2025); *C.B. v. Oddo*, 2025 WL 2977870, at *5; *Frank B. v. Green*, 2020 WL 1673026, at *3 (D.N.J. Apr. 6, 2020); *Tuser E. v. Rodriguez*, 370 F.Supp.3d 435, 442 (D.N.J. 2019); *Maksaddzhon A. v. Pittman*, 2025 WL 3648710, at *2–3 (D.N.J. Dec. 17, 2025). Therefore, this Court will also apply the factors

6

identified in *German Santos* to assess whether Rodriguez's detention has become unreasonable.

In *German Santos*, the Court of Appeals set out four factors for consideration in assessing whether detention without a bond hearing violates due process: (1) the duration of the petitioner's detention; (2) the likelihood of continued detention; (3) the reasons for any delay; and (4) the conditions of the petitioner's confinement. 965 F.3d at 212 (citing the factors in *Chavez-Alvarez v. Warden York Cty Prison*, 783 F.3d 469, 475-78 (3d Cir. 2015)). Application of these factors weighs in favor of granting Rodriguez an individualized bond hearing.

"The most important factor is the duration of detention." *Id.* Rodriguez has been detained for thirty-nine months without a bond hearing. This is well beyond the threshold courts have found to be unreasonable. *See Akhmadjanov*, 2025 WL 660663, at *4 (finding fourteen months without a bond hearing unreasonable); *Rivas v. Oddo*, 2023 WL 4361140, at *2 (W.D. Pa. June 27, 2023) (same); *Kleinauskaite v. Doll*, 2019 WL 3302236, at *6 (M.D. Pa. July 23, 2019) ("[T]his Court finds the twelve-month milestone appropriate in this case for determining when [Petitioner's] detention escaped the realm of reason."); *Tuser E. v. Rodriguez*, 370 F.Supp.3d 435, 442 (D.N.J. 2019) (finding nearly 20-month detention unreasonable); *see also Davydov v. Doll*, 2020 WL 969618, at *4 (M.D. Pa. Feb. 28, 2020) (collecting cases). The Court also finds that Rodriguez's detention is likely to continue. His appeal to the BIA may take many months, and if the BIA rejects his appeal, he has the right to petition for judicial review. "When the alien's removal proceedings are unlikely to

7

end soon, this suggests that continued detention without a bond hearing is unreasonable." *German Santos*, 965 F.3d at 211 (citing *Chavez-Alvarez*, 783 F.3d at 477–78).

As to the third *German Santos* factor, nothing in the record suggests that Rodriguez "made careless or bad-faith 'errors in the proceedings that caused unnecessary delay.'" *Id.* at 211 (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232 (3d Cir. 2011)). "Courts do not count a petitioner's good faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings." *Id.* (citing *Chavez-Alvarez*, 783 F.3d at 476–77). Indeed, the IJ initially granted his asylum application, and DHS elected to appeal that determination.

Finally, courts must consider whether the noncitizen's "conditions of confinement are 'meaningfully different[ ]' from criminal punishment." *Id.* (quoting *Chavez-Alvarez*, 783 F.3d at 478). This factor also weighs in favor of habeas relief. Rodriguez was initially detained at the Erie County Prison where he was housed alongside individuals serving criminal sentences or detained and awaiting trial on pending criminal charges. He was later transferred to the Louisiana ICE Processing Center, where he remains detained. The record is silent regarding the precise conditions of Rodriguez's confinement at this facility, but the facility's location at the Louisiana State Penitentiary (Angola), the largest maximum-security prison in the United States, ECF No. 22, p. 8, leaves the Court with no reason to believe that his conditions of confinement are meaningfully different from criminal punishment.

IV.  Conclusion

Having found that each of the *German Santos* factors weighs in favor of habeas relief, the Court will grant Petitioner Rodriguez's § 2241 Petition and order that an immigration judge provide him with a bond hearing within fourteen (14) days.

A separate Order follows.

Dated this 20th day of January, 2026.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE